UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PETER MENZEL,<br>　　　　Plaintiff,<br>　　v.<br>SCHOLASTIC, INC.,<br>　　　　Defendant. | Case No. 17-cv-05499-EMC<br><br>**ORDER DENYING DEFENDANT'S PARTIAL MOTION TO DISMISS, AND GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO STRIKE**<br><br>Docket No. 64 |

Plaintiff Peter Menzel is a photographer who has sued Defendant Scholastic, Inc. for copyright infringement. The Court previously granted Scholastic's motion to dismiss the original complaint as well as the first amended complaint ("FAC") for failure to state a claim for relief pursuant to *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). *See* Docket No. 42 (order); Docket No. 57 (minutes). Currently pending before the Court is Scholastic's motion to dismiss some, but not all, of the claims for copyright infringement asserted in the operative second amended complaint ("SAC"). In the alternative, Scholastic moves to strike certain paragraphs in the complaint.

Having considered the parties' briefs as well as the oral argument of counsel, the Court hereby **DENIES** the motion to dismiss and **GRANTS** in part and **DENIES** in part the motion to strike.

## I.　　FACTUAL & PROCEDURAL BACKGROUND

In the SAC, Mr. Menzel alleges that he owns copyrights to approximately 40 photographs and that Scholastic had 94 licenses to use the photographs in specific publications. *See* SAC ¶¶ 9, 13 & Ex. 1 (chart of 94 licenses).

According to Mr. Menzel, although Scholastic had these licenses, Scholastic has committed copyright infringement because it reproduced the photographs at issue in publications that were not approved by Mr. Menzel (*i.e.*, the uses were not actually licensed). Also, Scholastic continued to use the photographs after its licenses were used up or exhausted. The specific examples of infringement identified by Mr. Menzel are listed in the SAC at ¶¶ 13-25.

    (1) Scholastic used the photograph "woman with tray of bugs" (CAM_meb_7_xxs) in *Read 180, rBook Stage A, Enterprise Edition* (2005), a publication that was not approved by Mr. Menzel. *See* SAC ¶ 13. *Compare* SAC, Ex. 1 (Rows 82 and 85) (allowing use in Read 180 Stage A Next Generation and in Teacher Guide for Read 180 Stage A Next Generation). (Scholastic does not challenge this claim of copyright infringement in the motion to dismiss.)

    (2) Scholastic used the photograph "fried grasshoppers on tortilla with guacamole" (MEX_meb_xxs) in *Read 180, rBook Stage A, Enterprise Edition* (2005), a publication that was not approved by Mr. Menzel. *See* SAC ¶ 13. *Compare* SAC, Ex. 1 (Rows 83-84) (allowing use in Read 180 Stage A Next Generation). (Scholastic does not challenge this claim of copyright infringement in the motion to dismiss.)

    (3) Scholastic used the photograph "Kismet showing happy expression" (USA_rs_42_qxxs) in *The New Book of Knowledge, Volume 9* (2007), a publication that was not approved by Mr. Menzel. *See* SAC ¶ 14. *Compare* SAC, Ex. 1 (Row 57) (allowing use in New Book of Knowledge 2003).

    (4) Scholastic had a license to use the photograph "Boy looking at mealworm candy apple" (USA_meb_703_xs) in Super Science Magazine May 2011 Vol. 22 No. 8, *see* SAC, Ex. 1 (Row 79), but that license did not include use in electronic format. Scholastic went beyond the license by using the photograph in the online version of the magazine. *See* SAC ¶ 15.

    (5) Scholastic had a license to use the photograph "Honey ant desert" (AUS_meb_106_cxxs) in Super Science Magazine May 2011 Vol. 22 No. 8, *see* SAC, Ex. 1 (Row 80), but that license did not include use in electronic format. Scholastic

2

went beyond the license by using the photograph in the online version of the magazine. *See* SAC ¶ 15.

(6) Scholastic had a license to use the photograph "Insect pizza" (MEX_meb_01_xxs) in Super Science Magazine May 2011 Vol. 22 No. 8, *see* SAC, Ex. 1 (Row 81), but that license did not include use in electronic format. Scholastic went beyond the license by using the photograph in the online version of the magazine. *See* SAC ¶ 15.

(7) Scholastic had a license to use the photograph "Julian bites arctic char caught in glacier lake" (GRE04_0013_xxf1) in an electronic format for the magazine publication *Junior Scholastic* May 2011, *see* SAC, Ex. 1 (Row 72), but electronic rights were granted for five years only, *i.e.*, until April 11, 2016. After April 11, 2016, Scholastic continued to use the photograph on its website in an electronic version of the magazine. *See* SAC ¶¶ 16-17. (Scholastic does not challenge this claim of copyright infringement in the motion to dismiss.)

(8) Scholastic had a license to use the photograph "Revis family from Hungry Planet: What the World Eats" (USnc04_0001_xxf1rw) in an electronic format for the magazine publication *Junior Scholastic* May 2011, *see* SAC, Ex. 1 (Row 73), but electronic rights were granted for five years only, *i.e.*, until April 11, 2016. After April 11, 2016, Scholastic continued to use the photograph on its website in an electronic version of the magazine. *See* SAC ¶¶ 16-17. (Scholastic does not challenge this claim of copyright infringement in the motion to dismiss.)

(9) Scholastic had a license to use the photograph "Ayme family Ecuador from Hungry Planet: What the World Eats" (ECU04_0001_xxf1rw) in an electronic format for the magazine publication *Junior Scholastic* May 2011, *see* SAC, Ex. 1 (Row 74), but electronic rights were granted for five years only, *i.e.*, until April 11, 2016. After April 11, 2016, Scholastic continued to use the photograph on its website in an electronic version of the magazine. *See* SAC ¶¶ 16-17. (Scholastic does not challenge this claim of copyright infringement in the motion to dismiss.)

(10) Scholastic had a license to use the photograph "Ukita family in Tokyo from Hungry

3

1   Planet: What the World Eats" (JAP01_0001_xxf1s) in an electronic format for the
2   magazine publication *Junior Scholastic* May 2011, *see* SAC, Ex. 1 (Row 76), but
3   electronic rights were granted for five years only, *i.e.*, until April 11, 2016. After April
4   11, 2016, Scholastic continued to use the photograph on its website in an electronic
5   version of the magazine. *See* SAC ¶¶ 16-17. (Scholastic does not challenge this claim
6   of copyright infringement in the motion to dismiss.)

   (11) Scholastic had a license to use the photograph "Aboubakar family in Chad from
   Hungry Planet: What the World Eats" (CHA104_0001_xxf1rw) in an electronic format
   for the magazine publication *Junior Scholastic* May 2011, *see* SAC, Ex. 1 (Row 78),
   but electronic rights were granted for five years only, *i.e.*, until April 11, 2016. After
   April 11, 2016, Scholastic continued to use the photograph on its website in an
   electronic version of the magazine.[1] *See* SAC ¶¶ 16-17. (Scholastic does not challenge
   this claim of copyright infringement in the motion to dismiss.)

   (12) Scholastic had a license to use the photograph "Kismet robot surprised, blue
   background" (USA_rs_41_qxxs) in *Disney Yearbook 2001*, for up to 40,000 copies.
   *See* SAC ¶ 18 & Ex. 1 (Row 44). Mr. Menzel believes that Scholastic printed more
   than 40,000 copies of *Disney Yearbook 2001* because the yearbook is an annual
   publication and Scholastic printed 315,000 copies of *Disney Yearbook 2006*. *See* SAC
   ¶¶ 19-21.

   (13) Scholastic had a license to use the photograph "Kismet with angry expression, blue
   background" (USA_rs_38_qxxs) in *Disney Yearbook 2001*, for up to 40,000 copies.
   *See* SAC ¶ 18 & Ex. 1 (Row 45). Mr. Menzel believes that Scholastic printed more
   than 40,000 copies of *Disney Yearbook 2001* because the yearbook is an annual
   publication and Scholastic printed 315,000 copies of *Disney Yearbook 2006*. *See* SAC
   ¶¶ 19-21.

   (14) Scholastic had a license to use the photograph "Kismet with sleeping expression,

---

[1] In addition to (7)-(11) above, Mr. Menzel claims that Scholastic used a sixth photograph on its website in an electronic version of the magazine but the Court could not find a match.

blue background" (USA_rs_44_qxxs) in *Disney Yearbook 2001*, for up to 40,000 copies. *See* SAC ¶ 18 & Ex. 1 (Row 46). Mr. Menzel believes that Scholastic printed more than 40,000 copies of *Disney Yearbook 2001* because the yearbook is an annual publication and Scholastic printed 315,000 copies of *Disney Yearbook 2006*. *See* SAC ¶¶ 19-21.

 (15) Scholastic had a license to use the photograph "woman with tray of bugs" (CAM_meb_7_xxs) in *Read 180, rBook Stage A, Next Generation* (2012), for up to 500,000 copies. *See* SAC ¶ 22 & Ex. 1 (Rows 82 and 85). Mr. Menzel believes that Scholastic printed more than 500,000 copies of *Read 180, rBook Stage A, Next Generation* (2012), because, in a September 2011 press release, "Scholastic touted the success of its Read 180 Next Generation program," which aligns with Common Core Standards, which had $50 million in sales since its launch in May 2011, and which serves more than 1 million students in schools across the country. SAC ¶ 23. (Scholastic does not challenge this claim of copyright infringement in the motion to dismiss.)

 (16) Scholastic had a license to use the photograph "fried grasshoppers on tortilla with guacamole" (MEX_meb_1_xxs) in *Read 180, rBook Stage A, Next Generation* (2012), for up to 500,000 copies. *See* SAC ¶ 22 & Ex. 1 (Rows 83-84). Mr. Menzel believes that Scholastic printed more than 500,000 copies of *Read 180, rBook Stage A, Next Generation* (2012), because, in a September 2011 press release, "Scholastic touted the success of its Read 180 Next Generation program," which aligns with Common Core Standards, which had $50 million in sales since its launch in May 2011, and which serves more than 1 million students in schools across the country. SAC ¶ 23. (Scholastic does not challenge this claim of copyright infringement in the motion to dismiss.)

As indicated by the above, Mr. Menzel has identified 16 examples of infringement involving 13 photographs (out of approximately 40 total). Mr. Menzel basically maintains that these examples are enough to sustain claims of copyright infringement on all 40 or so

photographs, particularly because Scholastic has a pattern and practice of copyright infringement. In support of his claim that Scholastic is a "serial" infringer, Mr. Menzel points to the following:

- In a different case, *Sohm* (S.D.N.Y.), a district court held on summary judgment that Scholastic had infringed with respect to some copyrighted photographs. *See* SAC ¶¶ 35, 61 (referring to ruling that "'Plaintiffs are entitled to summary judgment on liability for copyright infringement as to the claims corresponding to rows 8, 9, and 13 through 16 of Docket No. 69-1'").
- Also, in *Sohm*, discovery revealed that Scholastic had exceeded its licensed print amount for eleven publications.[2] *See* SAC ¶ 49.
- In another case, *Krist* (E.D. Pa.), discovery revealed that Scholastic had exceeded its licensed print amount for two publications. *See* SAC ¶ 50.
- Including *Sohm* and *Krist*, Scholastic has been sued for copyright infringement in thirteen cases (with most of these cases being brought by Mr. Menzel's litigation counsel). *See* SAC ¶ 53. Most of these cases settled. A few cases are still pending.
- An attorney who was involved in a copyright case against Scholastic informed Mr. Menzel that she could not disclose any specifics about the case but stated that, with respect to the company's copyright practices, "'[L]ook how many times they have been sued by photographers.'" SAC ¶ 44.

## II. DISCUSSION

A. Motion to Dismiss

    1. Legal Standard

> To survive a [12(b)(6)] motion to dismiss for failure to state a claim after the Supreme Court's decisions in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), [a plaintiff's] factual allegations [in the complaint] "must . . . suggest that the claim has at least a plausible chance of success." In other words, [the] complaint "must allege 'factual content that allows

---

[2] One of these publications was from the *New Book of Knowledge* series. *See* SAC ¶ 49. Mr. Menzel notes that he licensed eight uses of his photographs to this series. *See* SAC ¶ 52.

6

United States District Court
Northern District of California

> the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"
>
> . . . . [The Ninth Circuit has] settled on a two-step process for evaluating pleadings:
>
>> First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively. Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.

*Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1134-35 (9th Cir. 2014).

Notably,

> [t]he plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility 'of entitlement to relief.'"

*Iqbal*, 556 U.S. at 678. On the other hand,

> [i]f there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6). Plaintiff's complaint may be dismissed only when defendant's plausible alternative explanation is so convincing that plaintiff's explanation is *im*plausible.

*Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) (emphasis in original).

2. <u>Scope of Motion to Dismiss</u>

Mr. Menzel's basic contention in the SAC is that Scholastic has used his 40 or so photographs in ways not authorized by the 94 licenses identified in Exhibit 1 and therefore has engaged in copyright infringement. Scholastic has framed its motion to dismiss based on Exhibit 1. That is, it moves to dismiss claims based on Rows 1-71 and 86-94 of the exhibit. *See* Reply at 1 n.1 (noting that Scholastic identified the wrong rows in its opening brief). Scholastic does not move to dismiss the claims based on Rows 72-85. *See* Reply at 1 n.1.

3. <u>Claims Based on Rows 44-46</u>

Among the claims Scholastic moves to dismiss are those based on Rows 44-46 of Exhibit

1. Mr. Menzel's claims based on Rows 44-46 are predicated on the allegations identified in examples (12)-(14) above. To wit:

- Scholastic had a license to use the photograph "Kismet robot surprised, blue background" (USA_rs_41_qxxs) in *Disney Yearbook 2001*, for up to 40,000 copies. *See* SAC ¶ 18 & Ex. 1 (Row 44). Mr. Menzel believes that Scholastic printed more than 40,000 copies of *Disney Yearbook **2001*** because the yearbook is an annual publication and Scholastic printed 315,000 copies of *Disney Yearbook **2006***. *See* SAC ¶¶ 19-21.

- Scholastic had a license to use the photograph "Kismet with angry expression, blue background" (USA_rs_38_qxxs) in *Disney Yearbook 2001*, for up to 40,000 copies. *See* SAC ¶ 18 & Ex. 1 (Row 45). Mr. Menzel believes that Scholastic printed more than 40,000 copies of *Disney Yearbook **2001*** because the yearbook is an annual publication and Scholastic printed 315,000 copies of *Disney Yearbook **2006***. *See* SAC ¶¶ 19-21.

- Scholastic had a license to use the photograph "Kismet with sleeping expression, blue background" (USA_rs_44_qxxs) in *Disney Yearbook 2001*, for up to 40,000 copies. *See* SAC ¶ 18 & Ex. 1 (Row 46). Mr. Menzel believes that Scholastic printed more than 40,000 copies of *Disney Yearbook **2001*** because the yearbook is an annual publication and Scholastic printed 315,000 copies of *Disney Yearbook **2006***. *See* SAC ¶¶ 19-21.

Scholastic essentially argues that infringement is not plausible because the 2001 annual and the 2006 annual are two different publications, five years apart, and there is no indication that "the books performed similarly." Mot. at 12.

The Court does not agree. Given that all reasonable inferences are to be made in Mr. Menzel's favor at this stage of the proceedings, Mr. Menzel has alleged enough to make a plausible infringement claim. In the SAC, Mr. Menzel alleges that the annual has been published since the 1980s, *see* SAC ¶ 18, and that each annual is "similar in appearance (see sample covers) and size (each contains 96) pages." SAC ¶ 19. If the 2006 annual had a print run of 315,000

8

copies, it is reasonable to infer that, even five years earlier, there was a significant print run on the 2001 annual – at least one that exceeded 40,000 copies.

#### 4. Claims Based on Rows 79-81

Scholastic also moves to dismiss the claims based on Rows 79-81 of Exhibit 1. Mr. Menzel's claims based on Rows 79-81 are predicated on the allegations identified in examples (4)-(6) above. To wit:

- Scholastic had a license to use the photograph "Boy looking at mealworm candy apple" (USA_meb_703_xs) in Super Science Magazine May 2011 Vol. 22 No. 8, *see* SAC, Ex. 1 (Row 79), but that license did not include use in electronic format. Scholastic went beyond the license by using the photograph in the online version of the magazine. *See* SAC ¶ 15.
- Scholastic had a license to use the photograph "Honey ant desert" (AUS_meb_106_cxxs) in Super Science Magazine May 2011 Vol. 22 No. 8, *see* SAC, Ex. 1 (Row 80), but that license did not include use in electronic format. Scholastic went beyond the license by using the photograph in the online version of the magazine. *See* SAC ¶ 15.
- Scholastic had a license to use the photograph "Insect pizza" (MEX_meb_01_xxs) in Super Science Magazine May 2011 Vol. 22 No. 8, *see* SAC, Ex. 1 (Row 81), but that license did not include use in electronic format. Scholastic went beyond the license by using the photograph in the online version of the magazine. *See* SAC ¶ 15.

In its motion to dismiss, Scholastic fails to adequately articulate why Mr. Menzel has failed to state a plausible claim for relief with respect to these rows. Therefore, the motion to dismiss as to these rows is denied.

#### 5. Claims Based on Rows 1-43, 47-71, and 86-94

Finally, Scholastic moves to dismiss with respect to the claims based on Rows 1-39, 47-71, and 86-94 of Exhibit 1. Scholastic argues, in essence, that, even though Mr. Menzel has adequately pled some claims for infringement (Rows 72-85), he "should not be permitted to use

9

[a] small [number] of claims to support the remainder of his Complaint and gain a wide-ranging audit of Scholastic in discovery." Mot. at 1. Scholastic adds: "Following extensive discovery in many of these matters, only *one* [*Sohm*] has resulted in any sort of judgment against Scholastic and, even in that case, garnered judgment on only a handful of uses after bringing *over a hundred claims of infringement*." Mot. at 8 (emphasis in original).

As above, the Court finds that Mr. Menzel has adequately alleged a plausible claim of copyright infringement, particularly as all reasonable inferences are to be made in Mr. Menzel's favor. Admittedly, Mr. Menzel has suggested that Scholastic has not complied with 94 licenses, *see* SAC, Ex. 1, but has pointed to only 16 specific instances of infringement. Also, Scholastic has been adjudged an infringer in one case only (*Sohm*) and the infringement there was limited in scope. Nevertheless, Mr. Menzel has alleged that Scholastic has exceeded licensed print runs in multiple instances (although, admittedly, those publications do not appear to involve Mr. Menzel's photographs). *See* SAC ¶¶ 49-50 (alleging that, in *Sohm*, Scholastic exceeded the licensed print runs in 11 publications and that, in *Krist*, Scholastic exceeded the print runs in two publications). Furthermore, Scholastic has settled a fair number of infringement cases and, even though this Court is not privy to the settlement terms, it may reasonably be inferred for purposes of Rule 12(b)(6) that there were plausible claims of infringement that warranted filing in those cases. Finally, the Court notes that there are about 40 photographs at issue in the instant case and Mr. Menzel's specific examples of infringement implicate 14 of those photographs – *i.e.*, about 1/3 of the total, enough to imply a possible pattern of practice.

B.  <u>Alternative Motion to Strike</u>

As the Court is denying Scholastic's motion to dismiss, it must address Scholastic's alternative motion to strike.

> Pursuant to Federal Rule of Civil Procedure 12(f), a court may strike from a pleading "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."[3] Fed .R. Civ. P.

---

[3] "Immaterial matter is that which has no essential or important relationship to the claim for relief or the defenses being pleaded. Impertinent matter consists of statements that do not pertain, and are not necessary, to the issues in question." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993) (internal quotation marks omitted).

10

> 12(f).  "The function of a 12(f) motion to strike is to avoid the
> expenditure of time and money that must arise from litigating
> spurious issues by dispensing with those issues prior to trial."
> *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir.
> 2010).  Motions to strike are generally disfavored.  *See Barnes v. AT
> & T Pension Ben. Plan – Nonbargained Program*, 718 F. Supp. 2d
> 1167, 1170 (N.D. Cal. 2010); *see also Platte Anchor Bolt, Inc. v.
> IHI, Inc.*, 352 F. Supp. 2d 1048, 1057 (N.D. Cal. 2004) (stating that,
> "[i]f there is any doubt whether the portion to be stricken might bear
> on an issue in the litigation, the court should deny the motion");
> *McRee v. Goldman*, No. 11-CV-00991-LHK, 2012 U.S. Dist.
> LEXIS 36793 (N.D. Cal. Mar. 19, 2012) (explaining that motions to
> strike are disfavored because the motions may be used as delaying
> tactics and because there is a strong policy favoring resolution on
> the merits).

*Media.net Advert. FZ-LLC v. Netseer, Inc.*, 198 F. Supp. 3d 1083, 1088-89 (N.D. Cal. 2016).

The specific paragraphs Scholastic seeks to strike are as follows: 6-8, 19-20, 35, 49-52, and 56-58.  *See* Prop. Order ¶ 2.

- ¶¶ 6-8.  The Court agrees that these paragraphs should be stricken.  They simply recite law (*e.g.*, what the elements of copyright infringement are).
- ¶¶ 19-20.  The motion to strike is denied.  These paragraphs relate to Mr. Menzel's position that Scholastic likely exceeded the licensed print run for the 2001 *Disney Yearbook* based on the number of copies that Scholastic published of the 2006 *Disney Yearbook*.
- ¶ 35.  The motion to strike is denied.  The paragraph concerns the *Sohm* district court's summary judgment ruling in favor of Mr. Menzel.  What happened in other copyright cases against Scholastic is relevant, especially as Mr. Menzel has now given specific examples of copyright infringement with respect to his photographs here.
- ¶¶ 49-52.  The motion to strike is denied.  These paragraphs concern the fact that Scholastic exceeded its licensed print runs in multiple publications (not involving Mr. Menzel's photographs).
- ¶¶ 56-68.  The motion to strike is denied.  These paragraphs concern the other copyright cases against Scholastic and where they currently stand (*e.g.*, settled, still pending).

11

### III. CONCLUSION

For the foregoing reasons, Scholastic's motion to dismiss is denied in its entirety. For the alternative motion to strike, the Court grants the request to strike ¶¶ 6-8 (which simply recite the law); however, the remainder of the motion is denied.

This order disposes of Docket No. 64.

**IT IS SO ORDERED**.

Dated: January 4, 2019

EDWARD M. CHEN
United States District Judge