UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

PETER MENZEL,

            Plaintiff,

    v.

SCHOLASTIC, INC.,

            Defendant.

Case No. 17-cv-05499-EMC

**PUBLIC/REDACTED VERSION**

**ORDER GRANTING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; AND GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Docket Nos. 105, 107

       Plaintiff Peter Menzel has sued Defendant Scholastic, Inc. for copyright infringement. Currently pending before the Court are motions for summary judgment or partial summary judgment filed by both parties. Having considered the parties' briefs and accompanying submissions, as well as the oral argument of counsel, the Court hereby **GRANTS** in part and **DENIES** in part each party's motion. The Court also **GRANTS** the various motions to file under seal that have been filed in conjunction with the summary judgment briefing.

**I.**     **DISCUSSION**

A.    Sealing Motions

       As an initial matter, the Court address the parties' motions to file under seal. *See* Docket Nos. 104, 106, 115, 119, 125 (motions). The motions have been filed because Scholastic has designated certain information as confidential – more specifically, information about its print runs. Because dispositive motions are at issue, Scholastic has the burden of showing that there are compelling reasons to prevent public disclosure. *See Kamakana v. City & County of Honolulu,*

447 F.3d 1172, 1178-79 (9th Cir. 2006) (stating that a "party must articulate[] compelling reasons supported by specific factual findings that outweigh the general history of access and the public policies favoring disclosure, such as the public interest in understanding the judicial process") (internal quotation marks omitted).  Mr. Menzel opposes sealing.

The Court has reviewed the substantive submitted by Scholastic.  Based on the declaration, there are compelling reasons to seal.  *See* Docket No. 104-1 (Lick Decl. ¶ 4) (testifying that Scholastic keeps "its print run totals confidential because exposing this information could give competitors an advantage in planning their own publications or book lines, including in determining how many books to print or setting prices for the publications, as well as knowing the value of various publications to Scholastic").  Mr. Menzel's arguments to the contrary are not persuasive.  For example, the print run information does not have to be a trade secret in order to qualify for sealing.  Also, that Scholastic has stipulated to public disclosure of certain print runs in a different case does not mean that it should thereby be compelled to file all of its print run information publicly.  In addition, while some of the print run information is old (*e.g.*, from 2003), that is not true for all of the print run information and, in any event, even historical information can still be information not shared with competitors.  Finally, the Court notes that knowing precise numbers for print runs is not of especial public significance.  If Mr. Menzel prevails in this case – even just in part – that will be public information available to other photographers.

Accordingly, the motions to file under seal are granted.  The Court now turns to the parties' motions for summary judgment.

B.    Legal Standard

Federal Rule of Civil Procedure 56 provides that a "court shall grant summary judgment [to a moving party] if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  An issue of fact is genuine only if there is sufficient evidence for a reasonable jury to find for the nonmoving party.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).  "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]."  *Id.* at 252.  At the summary judgment stage, evidence

1  must be viewed in the light most favorable to the nonmoving party and all justifiable inferences

2  are to be drawn in the nonmovant's favor. *See id.* at 255.

3        Where a defendant moves for summary judgment based on a claim for which the plaintiff

4  bears the burden of proof, the defendant need only by pointing to the plaintiff's failure "to make a

5  showing sufficient to establish the existence of an element essential to [the plaintiff's] case."

6  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Fontenot v. Upjohn Co.*, 780 F.2d

7  1190, 1194 (5th Cir. 1986) (stating that, "if the movant bears the burden of proof on an issue,

8  either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must

9  establish beyond peradventure all of the essential elements of the claim or defense to warrant

10  judgment in his favor") (emphasis omitted).

11        Where a plaintiff moves for summary judgment on claims that it has brought (*i.e.*, for

12  which it has the burden of proof), it "must prove each element essential of the claims . . . by

13  undisputed facts." *Cabo Distrib. Co. v. Brady*, 821 F. Supp. 601, 607 (N.D. Cal. 1992).

14        Where a defendant moves for summary judgment based on an affirmative defense (*i.e.*, an

15  issue on which it bears the burden of proof), the defendant must establish "all of the essential

16  elements of the . . . defense to warrant judgment in [its] favor." *Martin v. Alamo Cmty. College*

17  *Dist.*, 353 F.3d 409, 412 (5th Cir. 2003) (internal quotation marks omitted; emphasis omitted); *see*

18  *also Clark v. Capital Credit & Collection Servs.*, 460 F.3d 1162, 1177 (9th Cir. 2006) (noting that

19  a defendant bears the burden of proof at summary judgment with respect to an affirmative

20  defense).

21  C.    <u>Burden of Proof</u>

22        As an initial matter, the Court addresses the parties' dispute related to the burden of proof

23  on Mr. Menzel's copyright claim.

24        According to Mr. Menzel, to prevail on his copyright claim, he need only prove (1)

25  ownership of a valid copyright and (2) copying – nothing more. *See, e.g.*, *Feist Publ'ns, Inc. v.*

26  *Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991) (stating that, "[t]o establish infringement, two

27  elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent

28  elements of the work that are original"); *Rentmeester v. Nike, Inc.*, 883 F.3d 1111, 1116-17 (9th

Cir. 2018) (stating that "[t]o state a claim for copyright infringement, Rentmeester must plausibly allege two things: (1) that he owns a valid copyright in his photograph of Jordan, and (2) that Nike copied protected aspects of the photo's expression").  Mr. Menzel maintains that he has no obligation to prove that the copying was unauthorized – *e.g.*, beyond the scope of a license.  *See, e.g.*, *Muhammad-Ali v. Final Call, Inc.*, 832 F.3d 755, 760-61 (7th Cir. 2016) (stating that "a plaintiff is *not* required to prove that the defendant's copying was unauthorized in order to state a *prima facie* case of copyright infringement[;] [r]ather, the burden of proving that the copying was *authorized* lies with the defendant") (emphasis in original).

Scholastic takes a contrary position.  According to Scholastic, Mr. Menzel admitted in his SAC that Scholastic did have licenses to use his photographs, *see Hakopian v. Mukasey*, 551 F.3d 843, 846 (9th Cir. 2008) (stating that "[a]llegations in a complaint are considered judicial admissions"); *Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 227 (9th Cir. 1988) (stating that "[j]udicial admissions are formal admissions in the pleadings which have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact[;] [f]actual assertions in pleadings and pretrial orders, unless amended, are considered judicial admissions conclusively binding on the party who made them"), and, therefore, Mr. Menzel has the burden of proving that any use of his photographs by Scholastic was beyond the scope of the licenses.  In support, Scholastic cites *MAI Systems Corp. v. Peak Computer, Inc.*, 991 F.2d 511 (9th Cir. 1993). There, the Ninth Circuit stated that, "[t]o prevail on a claim of copyright infringement, a plaintiff must prove ownership of a copyright and a copying of protectable expression beyond the scope of a license."  *Id.* at 517 (internal quotation marks omitted); *see also S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081, 1085 (9th Cir. 1989) (noting the same); *Netbula, LLC v. BindView Dev. Corp.*, 516 F. Supp. 2d 1137, 1151 (N.D. Cal. 2007) (stating that "'[a] copyright owner who grants a nonexclusive license to use his copyrighted material waives his right to sue the licensee for copyright infringement'" and, "[w]here the existence of a license is not in dispute, and only the scope of the license is at issue, the copyright owner bears the burden of proving that the defendant's copying was unauthorized").  Scholastic also points out that the Second Circuit has provided a rationale as to why this burden is placed on the copyright owner.  Although "the

4

United States District Court
Northern District of California

possession of a license by an accused infringer traditionally has been characterized as an affirmative defense," that is because, "in most of the cases addressing the defense of license, the issue has been whether a license is held by the accused infringer." *Bourne v. Walt Disney Co.*, 68 F.3d 621, 631 (2d Cir. 1995). "[I]n such cases, evidence of a license is readily available to the alleged licensee, [and so] it is sensible to place upon that party the burden of coming forward with evidence of a license." *Id.* But "in cases where only the scope of the license is at issue, the copyright owner bears the burden of proving that the defendant's copying was unauthorized" because the court essentially has before it a contract dispute and, "in an ordinary contract action, the party claiming a breach carries the burden of persuasion." *Id.*; *cf. In re McGraw-Hill Global Educ. Holdings, LLC*, 909 F.3d 48, 66 (3d Cir. 2018) (recognizing that, under Second Circuit law, when the "the *scope* of the license is at issue," then "*unauthorized* use is part of the plaintiff's *prima facie* case" – *i.e.*, "where the plaintiff concedes the existence of a license, the burden may fall on the plaintiff, in the first instance, to demonstrate that the scope was exceeded"; but "[w]e have yet to consider that doctrine and have no cause to consider it today" because, in the case at hand, "[t]he licenses obtained by McGraw-Hill were not granted by the photographers directly but by Corbis as a sub-licensor" and, as the photographers "were not themselves directly privy to those licenses," they could not be "expect[ed] . . . to *plead* unauthorized use as part of a *prima facie* case") (emphasis in original and added).

Scholastic is correct. As a preliminary matter, the Court notes it has already held in the case at bar that, "because Mr. Menzel admitted in his complaint that license agreements do exist, he must include in his complaint allegations that, *e.g.*, the licenses have been exceeded." *Menzel v. Scholastic, Inc.*, No. 17-cv-05499-EMC, 2018 U.S. Dist. LEXIS 44833, at *8 n.1 (N.D. Cal. Mar. 19, 2018) (noting that, where allegations pled in a complaint establish the existence of an affirmative defense, a court may dismiss).

In addition, the Ninth Circuit has held that where, as here, it is undisputed that there was a license agreement, "[t]o prevail on a claim of copyright infringement, a plaintiff must prove ownership of a copyright and a copying of protectable expression *beyond the scope of [the] license*." *MAI*, 991 F.2d at 517 (internal quotation marks omitted; emphasis added); *see also*

*S.O.S.*, 886 F.2d at 1085 (noting the same).  This Court is bound by the Ninth Circuit precedent.

At the hearing, Mr. Menzel took the position that *MAI* and *S.O.S.* are distinguishable.  According to Mr. Menzel, in each case, the parties had a dispute about the scope of the license; given this circumstance, it was not unfair for the plaintiff to first bear the burden of proving what the actual scope of the license was.  But contrary to what Mr. Menzel asserts, *MAI* did not involve a dispute about the scope of the license.  Rather, the issue was whether the defendant had engaged in any "copying" under the Copyright Act.  And in neither *MAI* nor *S.O.S.* did the Ninth Circuit suggest that its holding uniquely applies to a dispute about the scope of the license.

Finally, the Second Circuit case *Bourne* provides persuasive rationale as to why the plaintiff should have the burden of proving copying beyond the scope of a license where there is no dispute that a license exists and the only question is whether the defendant's use of copyrighted material falls within the scope of the existing license.  "[W]here only the scope of the license is at issue, the copyright owner bears the burden of proving that the defendant's copying was unauthorized" as the court has essentially before it a contract dispute and, "in an ordinary contract action, the party claiming a breach carries the burden of persuasion."  *Bourne*, 68 F.3d at 631.

The Court acknowledges the Seventh Circuit's *Muhammad-Ali* decision on which Mr. Menzel relies.  *See Muhammad-Ali*, 832 F.3d at 760-61 (stating that "a plaintiff is *not* required to prove that the defendant's copying was unauthorized in order to state a *prima facie* case of copyright infringement[;] [r]ather, the burden of proving that the copying was *authorized* lies with the defendant") (emphasis in original).  However, as Scholastic points out, the case provides limited support as, there, "the plaintiff had not [pled] that a license had been issued and [exceeded].  Rather, the defendant contended that its distribution of lithographs depicting Louis Farrakhan had been permitted under an implied license."  Def.'s Opp'n at 4 n.1.  Moreover, the Seventh Circuit *Muhammad-Ali* decision makes the same point that the Second Circuit *Bourne* decision did – *i.e.*, that usually a defendant has the burden of proving that a use was authorized (*e.g.*, by a license) because it is difficult for a plaintiff to prove a negative (*i.e.*, that the use was not authorized) and, "if there is evidence of a license, it is most likely to be in the possession of the purported licensee."  *Muhammad-Ali*, 832 F.3d at 761 (citing *Bourne*).  In this case, it is largely

undisputed that there were licenses between Mr. Menzel and Scholastic.

Left with this predicament, Mr. Menzel argues that the instant case is distinguishable from the cases on which Scholastic relies because, here, there is no "disagreement about the scope of a license"; rather, the "licenses are clear on their face" and "Scholastic doesn't argue that there is any disagreement as to what the licenses permit, and what they do not." Pl.'s Reply at 2-3. But Mr. Menzel misses the point. *Bourne* distinguished two situations: (1) where the existence of a license was in dispute and (2) where the existence of a license was not in dispute but there was a question as to whether the defendant's use had gone beyond the scope of the license. *Bourne* was not concerned about how clear the *scope* of the license was– *i.e.*, that license terms might need to be interpreted – although admittedly some license terms did need interpretation in *Bourne*. Where the fact of the license is clear, the plaintiff must prove the defendant exceeded that license. *Cf., e.g.*, *S.O.S.*, 886 F.2d at 1088-89 ("conclud[ing] that Payday exceeded the scope of its license" based on the "unambiguous" and "literal" language of the contract; remanding to the district court to determine "[w]hether [Payday's] acts, unshielded by any license, infringed S.O.S.'s copyright").

Accordingly, the Court holds that, to the extent that the existence of a license is not disputed, Mr. Menzel has the burden of proving of proving that Scholastic exceeded the scope of the license issued.

D.     Main Affirmative Defenses

The Court addresses next the main affirmative defenses asserted by Scholastic.[1]

---

[1] There are several affirmative defenses (for which Mr. Menzel seeks summary judgment) that are not that significant or that are duplicative. For example:

- First affirmative defense: failure to state a claim for relief. Even if this defense is not properly denominated an affirmative defense (*i.e.*, one for which Scholastic bears the burden of proof), that does not mean that Scholastic cannot defend on ground that Mr. Menzel has not proven the elements of his copyright claim.
- Third affirmative defense: license. This defense relates to the burden-of-proof issue discussed above. Given the Court's ruling above, this defense is not actually an affirmative defense (*i.e.*, one for which Scholastic bears the burden of proof), but Scholastic may still defend on the basis that Mr. Menzel has failed to prove the elements of his copyright claim.
- Seventh, ninth, and tenth affirmative defenses: lack of standing, lack of injury, and statutory damages. These defenses are essentially duplicative of another defense – *i.e.*, that

1.     <u>Time Bar/Damages Bar</u>

In its second affirmative defense, Scholastic asserts that Mr. Menzel's copyright claim "is barred, in whole or in part, by the applicable three[-]year statute of limitations for a claim of copyright infringement (17 U.S.C. § 507(b)) *and/or* the three[-]year limitation on damages pursuant to *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 134 S. Ct. 1962, 1969 (2014)." Ans., 2d Affirm. Def. (emphasis added). Because this case was filed back in September 2017, Scholastic is arguing that Mr. Menzel can sue only for infringements that took place from September 2014 and after, and, in any event, is limited to damages that were incurred for that period.

There is no dispute that the above defense is in fact an affirmative defense for which Scholastic bears the burden of proof. Both parties have moved for summary judgment on the affirmative defense.

a.     <u>Time Bar</u>

i.     <u>Discovery Rule v. Injury Rule</u>

Title 17 U.S.C. § 507(b) provides that "[n]o civil action shall be maintained under the provisions of this title [governing copyrights] unless it is commenced within three years after the claim accrued." 15 U.S.C. § 507(b).

In *Polar Bear Products v. Timex Corp.*, 384 F.3d 700 (9th Cir. 2004), the Ninth Circuit explained that a copyright claim accrues "when the copyright holder 'has knowledge of a violation or is chargeable with such knowledge.'" *Id.* at 706. In other words, "the three-year clock begins upon discovery of the infringement." *Id.* Accordingly, "the statute of limitations does not prohibit recovery of damages incurred more than three years prior to the filing of suit if the copyright plaintiff was unaware of the infringement, and that lack of knowledge was reasonable under the circumstances." *Id.* The Ninth Circuit added that "[i]t makes little sense . . . to bar damages recovery by copyright holders who have no knowledge of the infringement, particularly in a case

---

the copyright registrations are invalid or unenforceable.
- Eighth affirmative defense: "good faith." This defense relates to the willful infringement issue discussed below. Even if the defense is not properly categorized as an affirmative defense (*i.e.*, one for which Scholastic bears the burden of proof), Scholastic may still defend on the ground that Mr. Menzel has failed to prove the elements of willful infringement.

. . . in which much of the infringing material is in the control of the defendant." *Id.* at 706-07.

In the instant case, Mr. Menzel relies on *Polar Bear*'s "discovery rule" to argue that his copyright claim is not time barred. More specifically, he argues that, even though many infringements took place before September 2014, he did not sue at that time because "he had no reason to believe Scholastic was infringing. It was only after he spoke with a colleague at a National Geographic convention – between 2 and 3 years ago – and retained counsel that he suspected Scholastic had been infringing his work." Pl.'s Opp'n at 14.

Scholastic recognizes *Polar Bear*'s discovery rule but contends that it was effectively overruled by the Supreme Court's 2014 decision in *Petrella*.

In *Petrella*, the Supreme Court addressed "whether the equitable defense of laches . . . may bar relief on a copyright infringement claim brought *within* § 507(b)'s three-year limitations period." *Petrella*, 572 U.S. at 667 (emphasis added); *see also id.* at 674-75 (noting that plaintiff "sought relief only for acts of infringement occurring" three years before she filed suit). The Court ultimately held that the defense may not bar relief because "courts are not at liberty to jettison Congress' judgment on the timeliness of suit." *Id.*

Given the specific question being addressed by Supreme Court – laches – *Petrella* is not on point. Scholastic argues nevertheless that there is language in *Petrella* indicating that the discovery rule has been supplanted by an injury rule (*i.e.*, that a claim accrues at time of injury regardless of discovery). In particular:

- "A claim ordinarily accrues 'when [a] plaintiff has a complete and present cause of action.' In other words, the limitations period generally begins to run at the point when 'the plaintiff can file suit and obtain relief.' A copyright claim thus arises or 'accrue[s]' when an infringing act occurs." *Id.* at 670.

- "Although we have not passed on the question, nine Courts of Appeals have adopted, as an alternative to the incident of injury rule, a 'discovery rule,' which starts the limitations period when 'the plaintiff discovers, or with due diligence should have discovered, the injury that forms the basis for the claim.'" *Id.* at 670 n.4.

9

But the language from *Petrella* does not do away with the discovery rule. Instead, the Supreme Court recognized that it had not passed on the question of whether the discovery rule could serve as an alternative to the injury rule.[2] Absent a clear overruling by the Supreme Court, this Court remains bound by the discovery rule as established in *Polar Bear*. *Cf. Day v. Apoliona*, 496 F.3d 1027, 1031 (9th Cir. 2007) (noting that, "'[w]here intervening Supreme Court authority is clearly irreconcilable with our prior circuit authority[,] . . . a three judge panel of this court and district courts should consider themselves bound by the intervening higher authority and reject the prior opinion of this court as having been effectively overruled'"). Even the case cited by Scholastic, which states that "[s]ome language in *Petrella* does appear to embrace an injury-rule analysis," ultimately still applied the discovery rule. *Yue v. MSC Software Corp.*, No. 15-cv-05526-PJH, 2016 U.S. Dist. LEXIS 94884, at *2 (N.D. Cal. July 20, 2016) (stating that, because the Supreme Court "did not directly 'pass on' the issue of whether the discovery rule was available to a plaintiff who was not aware of an earlier infringement, . . . the Ninth Circuit's decision in *Polar Bear Products* remains binding precedent in this circuit").

### ii. <u>Application of Discovery Rule</u>

Scholastic contends that, even if the Court does apply the discovery rule, Mr. Menzel's claims are still time barred. More specifically, Scholastic contends that, if all that Mr. Menzel has to prove for copyright infringement is (1) ownership and (2) copying (as he claims), then he "'discovered' ownership and use shortly after the invoices [*i.e.*, licenses] were issued." Def.'s

---

[2] In a post-*Petrella* case, *SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC*, 137 S. Ct. 954 (2017), the Supreme Court addressed an issue similar to that in *Petrella* – whether laches could preclude a claim for damages incurred within the Patent Act's six-year limitations period. *See* 35 U.S.C. § 286. Contrary to what Scholastic suggests, nothing in *SCA* indicated that the Supreme Court was foreclosing the discovery rule. The Court simply stated as follows:

> As we wrote in *Petrella*, "[a] claim ordinarily accrues 'when [a] plaintiff has a complete and present cause of action.'" While some claims are subject to a "discovery rule" under which the limitations period begins when the plaintiff discovers or should have discovered the injury giving rise to the claim, that is not a universal feature of statutes of limitations. And in *Petrella*, we specifically noted that "we have not passed on the question" whether the Copyright Act's statute of limitations is governed by such a rule.

*SCA*, 137 S. Ct. at 962.

Mot. at 9.

This argument makes little sense.  The question is not when Mr. Menzel knew or should have known that Scholastic was copying his photographs but rather when it was (allegedly) *illegally* copying them.

Scholastic does try to clarify the issue somewhat in its reply brief:

> Plaintiff claims that he can both file suit and be granted summary judgment solely on the basis of a showing of ownership and use of his photographs (*i.e.*, that he does not have any burden to show that the use was infringing).  There is nothing confusing or wrong about holding him to this same position when it comes to determining the time of accrual of his claims for statute of limitations purposes.

Def.'s Reply at 6.  But Scholastic's position is problematic given that, as discussed above, for purposes of the instant case, Mr. Menzel has to show that the copying exceeded the scope of the license.

The Court thus denies Scholastic's motion for summary judgment on the statute of limitations.  Scholastic has not established the essential elements of its affirmative defense – *i.e.*, did Mr. Menzel know or should he have known about the alleged infringements prior to September 2014?

As for Mr. Menzel's motion for summary judgment on the statute of limitations, it is granted.  Mr. Menzel argued that there is no evidence to support Scholastic's argument that his copyright claims are time barred.  Scholastic did not provide any such evidence of Mr. Menzel's earlier actual or constructive knowledge of the alleged infringements prior to 2014 (*e.g.*, that information on print runs are public and that therefore Mr. Menzel should have known that a print run was exceeded on a license prior to September 2014).

b.    Damages Bar

According to Scholastic, even if the Court does not construe *Petrella* in its favor on the statute of limitations, *Petrella* holds that, even if a claim is not time barred, a plaintiff is still limited to damages that were incurred within the three years prior to the plaintiff's filing suit.

There are several problems with Scholastic's position.  First, *Petrella* is not on point because, in the case, the plaintiff never sought damages outside of the three-year period before the

filing of the complaint. *See Petrella*, 572 U.S. at 674-75 (noting that the plaintiff filed suit on January 6, 2009, and "sought relief only for acts of infringement occurring on or after January 6, 2006").

Second, Scholastic isolates language used in *Petrella* from the broader context of the case. Scholastic focuses on the following language from *Petrella*: "As earlier observed, *see supra*, at 671-672 . . . , a successful plaintiff can gain retrospective relief only three years back from the time of filing suit. *No recovery may be had for infringement in earlier years.*" *Id.* at 677 (emphasis added). But in pages 671-72, the Supreme Court was simply making its point that, for statute-of-limitations purposes, there is an injury rule for accrual: "[A] copyright claim . . . arises or 'accrue[s]' when an infringing act occurs." *Id.* at 671. Thus, the statement above from *Petrella* did not clearly create a damages bar independent of a time bar. The discovery rule and the ability to recover damages consistent with that rule was not at issue.

Third, because *Petrella* did not clearly create damages bar independent of the limitations bar, *Polar Bear* continues to be binding precedent on this Court, and, in *Polar Bear*, the Ninth Circuit made clear that a plaintiff can be awarded *damages* outside of the three-year period before the filing of his complaint.

> In copyright litigation, the statute of limitations issue that often arises is that the plaintiff filed its copyright claim more than three years after it discovered or should have discovered infringement. Here, Timex makes a different, novel argument and asks us to rule that § 507(b) prohibits copyright plaintiffs from obtaining any damages resulting from infringement occurring more than three years before filing the copyright action, regardless of the date the plaintiff discovered the infringement. In *Kling v. Hallmark Cards, Inc.*, 225 F.3d 1030, 1041-42 (9th Cir. 2000), we left for another day precisely this argument; that day is now upon us. We conclude that § 507(b) *permits damages occurring outside of the three-year window*, so long as the copyright owner did not discover – and reasonably could not have discovered – the infringement before the commencement of the three-year limitation period. Because Polar Bear did not discover Timex's infringement until within three years of filing suit, Polar Bear may recover damages for infringement that occurred outside of the three-year window.

*Id.* at 705-06 (emphasis added).

The cases on which Scholastic relies, *see, e.g.*, *Papazian v. Sony Music Entm't*, No. 16-cv-07911 (RJS), 2017 U.S. Dist. LEXIS 164217 (S.D.N.Y. Sept. 28, 2017), are not persuasive in that

(1) they do not do much other than quote *Petrella* and/or (2) they do not provide any real

explanation as to why a plaintiff who, under the discovery rule, has a timely claim cannot get

damages outside of the three-year period prior to the filing of his suit. Indeed, it is not even clear

that the courts were asked to address this specific issue. Furthermore, as Mr. Menzel points out,

there are post-*Petrella* cases that expressly reject Scholastic's position. *See, e.g.*, *PK Music

Performance, Inc. v. Timberlake*, No. 16-CV-1215 (VSB), 2018 U.S. Dist. LEXIS 169652

(S.D.N.Y. Sep. 30, 2018); *Mitchell v. Capitol Records, LLC*, 287 F. Supp. 3d 673 (W.D. Ky.

2017).

Accordingly, as to the "damages bar" asserted by Scholastic, the Court denies summary

judgment in favor of Scholastic and grants summary judgment in favor of Mr. Menzel.

### 2. Claims Arise Under Contract Law

In its fourth affirmative defense, Scholastic alleges that, "[t]o the extent [it] has breached

the terms of any license agreement, Plaintiff's claims arise under contract law, not copyright law."

Ans., 4th Affirm. Def. Only Mr. Menzel has moved for summary judgment on this defense.

The backdrop for the defense is related to a distinction that courts have made between

contract "conditions" and contract "covenants" when a plaintiff gives a license to the defendant to

use its copyright. The Ninth Circuit has explained as follows:

> "A copyright owner who grants a nonexclusive, limited license
> ordinarily waives the right to sue licensees for copyright
> infringement, and it may sue only for breach of contract." However,
> if the licensee acts outside the scope of the license, the licensor may
> sue for copyright infringement. Enforcing a copyright license
> "raises issues that lie at the intersection of copyright and contract
> law."
>
> We refer to contractual terms that limit a license's scope as
> "conditions," the breach of which constitute copyright infringement.
> We refer to all other license terms as "covenants," the breach of
> which is actionable only under contract law. We distinguish
> between conditions and covenants according to state contract law, to
> the extent consistent with federal copyright law and policy.

*MDY Indus., LLC v. Blizzard Entm't, Inc.*, 629 F.3d 928, 939 (9th Cir. 2010); *see also Graham v.

James*, 144 F.3d 229, 237 (2d Cir. 1998) (noting that, "if the nature of the licensee's violation

consists of a failure to satisfy a condition to the license . . . any use by the licensee is without

13

authority from the licensor and may therefore[] constitute infringement of copyright") (internal

quotation marks omitted).

In *MDY*, the Ninth Circuit gave the following example distinguishing conditions from

covenants.

> "[C]onsider a license in which the copyright owner grants a person the right to make one and only one copy of a book with the caveat that the licensee may not read the last ten pages. Obviously, a licensee who made a hundred copies of the book would be liable for copyright infringement because the copying would violate the Copyright Act's prohibition on reproduction and would exceed the scope of the license. Alternatively, if the licensee made a single copy of the book, but read the last ten pages, the only cause of action would be for breach of contract, because reading a book does not violate any right protected by copyright law."

*Id.* at 940 (quoting *Storage Tech. Corp. v. Custom Hardware Eng'g & Consulting, Inc.*, 421 F.3d

1307, 1316 (Fed. Cir. 2005)). The *MDY* court confirmed this approach by making the following

comment with respect to the facts of the case before it:

> For instance, [Term of Use] § 4(D) forbids creation of derivative works based on [World of Warcraft] without Blizzard's [*i.e.*, the game creator's] consent. A player who violates this prohibition would exceed the scope of her license and violate one of Blizzard's exclusive rights under the Copyright Act. In contrast, ToU § 4(C)(ii) prohibits a player's disruption of another player's game experience. A player might violate this prohibition while playing the game by harassing another player with unsolicited instant messages. Although this conduct may violate the contractual covenants with Blizzard, it would not violate any of Blizzard's exclusive rights of copyright.

*Id.* at 940-41.[3] *But see Sohm v. Scholastic Inc.*, No. 16-CV-7098 (JPO), 2018 U.S. Dist. LEXIS

53490, at *34-35 (S.D.N.Y. Mar. 28, 2018) (concluding that a license term limiting print runs was

a covenant and not a condition because, under New York contract law, a contract term that simply

delineates acceptable and unacceptable behavior under a license (*i.e.*, no condition created) is a

---

[3] *Accord Spinelli v. Nat'l Football League*, 903 F.3d 185, 202 (2d Cir. 2018) ("[W]e have held that where an agreement permitted the licensee to distribute a computer program on CD-ROMs and required the licensee to pay the licensor $1,000 for each new CD-ROM release and $1 dollar for each copy sold, the licensee's failure to pay the applicable royalties on its CD-ROM sales constituted a breach of contract, not copyright infringement. By contrast, where an agreement licensed CBS's use of a journalist's videos and photographs in its own programming, but did not allow CBS to sublicense the journalist's materials, CBS's sublicenses to other companies exposed CBS to liability for copyright infringement.").

covenant; license was given to Scholastic by Corbis, a third party to whom the plaintiff-photographer gave authority to issue licenses on his behalf). Thus, "for a licensee's violation of a contract to constitute copyright infringement, *there must be a nexus between the condition and the licensor's exclusive rights of copyright*." *Id.* (emphasis added).

In the instant case, Mr. Menzel alleges that Scholastic exceeded the terms of the license agreements by, *e.g.*, exceeding print runs, going outside geographical restraints, and violating restrictions to the printed (as opposed to electronic) form. *MDY* is thus on point. *See also Actuate Corp. v. Fid. Nat'l Info. Servs.*, No. C 14-02274 RS, 2014 U.S. Dist. LEXIS 117513, at *6 (N.D. Cal. Aug. 21, 2014) (stating that "courts in this circuit have recognized claims for copyright infringement where the licensee created or distributed copies in excess of explicit numeric conditions within the licensing agreement while rejecting such claims where the gravamen of the complaint was a failure to remit sufficient royalties"); *Actuate*, 2014 U.S. Dist. LEXIS 117513, at *8 (indicating that "form and geographic limitations" would be considered conditions). Moreover, tellingly, Scholastic has not identified any specific contract term that it believes should be construed as a covenant instead of a condition. Because it is Scholastic's burden to prove its affirmative defense, and not Mr. Menzel's, the Court grants Mr. Menzel's motion for summary judgment on the affirmative defense.

Scholastic argues still that there will be questions of fact as to whether contract terms are conditions or covenants, citing in particular Mr. Menzel's deposition. Scholastic relies on the following to argue it is a question of fact as to whether, *e.g.*, a print run limitation is a condition or covenant.

> A. . . . I remember in grade school seeing all these little pamphlets and magazines that they would send around, and you know, I really trusted Scholastic.
>
> Q. And you don't anymore?
>
> A. I trust them less.
>
> Q. And why is that?
>
> A. Because if they fall into the category of textbook publishing in general, print runs are overrun and they don't come back and ask for, you know, a renewed license.

> People tend to ask when they get caught and they are not
> proactive in knowing that their print run doubled and that
> they should go back to all the people that they licensed from
> and tell them that fact so that they could increase their fee a
> little bit.

Docket No. 113-2 (Rosenthal Decl., Ex. A) (Menzel Depo. at 100-01). But the deposition testimony weighs more in favor of Mr. Menzel rather than Scholastic – *i.e.*, a "renewed license" with more money would be required because the original license was conditioned on compliance with the specific print run limitations.

### 3. Invalid and/or Unenforceable Copyright Registration

In the sixth affirmative defense, Scholastic asserts that "some or all . . . copyright registrations may be invalid and/or unenforceable." Ans., 6th Affirm. Def.; *see also* 7 U.S.C. § 411(a) (providing that "no civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title").

Only Mr. Menzel has moved for summary judgment on this defense.

Based on its opposition, Scholastic seems to make two arguments as to why certain copyright registrations are problematic. Each argument is addressed below.

### a. Copyright Registration VA 1-719-226

According to Scholastic, one problematic copyright registration is VA 1-719-226 (registered in October 2007). That registration apparently covers hundreds of images, including eight images at issue in this case. *See* Def.'s Opp'n at 11 (identifying rows from SAC that are covered by the registration VA 1-719-226; also stating that the "backup" for the copyright registration consists of "approximately fifty pages, each identifying over one hundred images that are purportedly registered").

Under the Copyright Act regulations, an applicant may ask for one registration – a "group registration" – to cover more than one photograph. The Copyright Office has a circular on "Multiple Works" (Circular No. 34) that addresses, *inter alia*, group registrations. It provides, *inter alia*, as follows:

> When the Copyright Office issues a group registration, it prepares

> one certificate of registration for the entire group and assigns one registration number to that certificate. A registration for a group of unpublished works, a group of unpublished photographs, a group of published photographs, a group of contributions to periodicals, or a group of secure test items covers the copyrightable authorship in each work that has been included in the group, and each work is considered to be registered as a separate work. Similarly, a registration for a group of serials, newspapers, or newsletters covers each issue in the group, and each issue is considered to be registered as a separate work.

https://www.copyright.gov/circs/circ34.pdf (last visited December 4, 2019).

In October 2007, the federal regulations specified as follows with respect to group registration of photographs:

> Pursuant to the authority granted by 17 U.S.C. 408(c)(1), the Register of Copyrights will accept a single application (on Form VA), deposit and filing fee for registration of a group of photographs if the following conditions are met: [*inter alia*] (iii) The photographs in the group must have been *published within the same calendar year*.

37 C.F.R. § 202.3(b)(10)(iii) (version effective July 25, 2007, to July 1, 2008) (emphasis added).[4]

According to Scholastic, Mr. Menzel is not entitled to summary judgment on the affirmative defense of invalidity/unenforceability because there is a question of fact as to whether the photographs in the group covered by the registration were all published within the same calendar year. The registration on its face indicates that the date of publication is October 2007. *See* 17 U.S.C. § 101 (defining "publication" as "the distribution of copies or phonorecords of a work to the public by sale or other transfer of ownership, or by rental, lease, or lending"). But, Scholastic notes, per Row 3 in the SAC, it got a license to use one photograph covered by the registration in 1998 – *i.e.*, *before* the alleged date of publication. Similarly, per Rows 47-51, Scholastic got a license to use a photograph covered by the registration in 2001 – *i.e.*, *before* the alleged date of publication.[5]

---

[4] If the photographs "were all published on the same date, the date of publication must be identified in space 3b of the application"; if not, "the range of dates of publication . . . must be specified in space 3b of the application, and the date of publication of each photograph within the group must be identified [*e.g.*] [o]n each deposited image." 37 C.F.R. § 202.3(b)(10)(iv).

[5] Scholastic also got a license to use a photograph after 2007 (see Rows 69, 71, 79, 87, and 89) but that would seem to be inconsequential because that would be consistent with a first publication date of 2007.

United States District Court
Northern District of California

The Court is not persuaded by Scholastic's argument.  Although Scholastic has pointed to some inaccuracies in the copyright registration at issue – with respect to six different images – an inaccuracy in and of itself is not a basis to invalidate a copyright.  The Ninth Circuit has held that

> "[a] certificate of registration satisfies the [registration requirement], regardless of whether the certificate contains any inaccurate information," unless (1) "the inaccurate information was included on the application for copyright registration with knowledge that it was inaccurate," and (2) "the inaccuracy of the information, if known, would have caused the Register of Copyrights to refuse registration."  17 U.S.C. § 411(b)(1).  Thus we have held that "inadvertent mistakes on registration certificates do not invalidate a copyright and thus do not bar infringement actions, unless the alleged infringer has relied to its detriment on the mistake, or the claimant intended to defraud the Copyright Office by making the misstatement."

*L.A. Printex Indus. v. Aeropostale, Inc.*, 676 F.3d 841, 852-53 (9th Cir. 2012).

Here, Scholastic has not made any claim that it relied on Mr. Menzel's mistake.  And to the extent that Scholastic suggests Mr. Menzel intended to defraud the Copyright Office instead of simply committing an inadvertent error, no reasonable jury could so find based on the undisputed facts in the record.  Scholastic admits that the group registration at issue covers thousands of photographs.  *See* Def.'s Opp'n at 11 (stating that the "backup" for the copyright registration consists of "approximately fifty pages, each identifying over one hundred images that are purportedly registered").  But it has pointed to inaccuracies with respect to only six of the thousands of images.  This limited number suggests at most negligence or a mistake rather than a deliberate intent to defraud the Copyright Office.  Nor is there any other indicia of a pattern or practice by Mr. Menzel to include inaccurate information in his registration application.  Scholastic has not made a plausible claim of fraud which can reasonably be inferred on these facts.

Accordingly, the Court grants Mr. Menzel's motion for summary judgment on the affirmative defense to the extent copyright registration VA 1-719-226 is at issue.

### b.  Infringement Before Registration

In addition to the copyright registration above, Scholastic challenges a few other copyright registrations.  More specifically, Scholastic argues that, in certain instances, Mr. Menzel is claiming infringement before Mr. Menzel registered the photograph.

18

Scholastic has a fair point in two instances. More specifically, for Rows 50 and 51 of the SAC, the copyright registration for the photograph is October 2007, and Mr. Menzel seems to be claiming infringement based on a book published in 2002.

Other than these two examples, however, Scholastic has not shown alleged infringements prior to the copyright registration date. Although Scholastic identifies several more examples that it claims support its position, those examples do not actually lend any support because they are mistakenly predicated on the information in the SAC which shows only the publications where Scholastic was permitted to use the photographs – not publications where Scholastic infringed. *See* Def.'s Opp'n at 10 (discussing Rows 3, 13-21, 28-39, 44-46, and 47-51 *of the SAC*).

Accordingly, the Court denies Mr. Menzel's motion for summary judgment on Rows 50 and 51 of the SAC; but otherwise, Mr. Menzel's motion is granted because Scholastic has not identified other examples where (alleged) infringement occurred prior to the registration date.

E.    Chart on Alleged Infringements

Having addressed the burden of proof and the main affirmative defenses asserted by Scholastic, the Court now turns to Mr. Menzel's specific claims of infringement. The parties have provided a chart to the Court that covers each claim of alleged infringement. Each row in the chart is addressed below.[6] *See* Docket No. 126-1 (chart).

1.    Row 13a

Scholastic's motion for summary judgment based on the statute of limitations is denied.[7]

---

[6] The Court notes that, in several instances, the chart shows several rows of alleged infringements based on a single publication source by Scholastic (*e.g.*, Rows 13a-b; Rows 15a-c; Rows 17a-f; Rows 2-3; Rows 5-11; Rows 13-17; Rows 18-21; Rows 22-25; Rows 26-27; Rows 28-39; Rows 40-43; Rows 44-46; Rows 47-49; Rows 50-51; Rows 53-54; Rows 58-59; Rows 62-68; Rows 72-78; Rows 79-81; Rows 82-83; Rows 87-88; Rows 89-91). This usually seems to happen where there are a series of related photos by Mr. Menzel (*e.g.*, photos of various meals made out of bugs). Scholastic would use all of the related photos in one magazine or book article. Although this fact does not have any impact on the prima facie case for infringement, the context is still important to keep in mind as it arguably has some bearing on how "willful" an infringer Scholastic allegedly is. In other words, even though there may be multiple violations, the number of violations may be tempered somewhat by the fact that Scholastic published the multiple photos in one publication source.

[7] Hereinafter, where the Court refers to the statute-of-limitations defense, it also refers to the damages bar defense.

United States District Court
Northern District of California

Mr. Menzel's motion for summary judgment is also denied because there is a question of fact. Mr. Menzel claims that the photo appears in a book (published in 2005) and that Scholastic has not produced a license/invoice for use in that book. Scholastic does not dispute use of the photo in the book but argues there is a question of fact as to whether the use was licensed. In particular, Scholastic argues that, even though it does not have the actual license/invoice anymore, it was able to find a document (Ex. PP) that suggests there was a license/invoice. The Court has looked at Ex. PP. Row 5 in Ex. PP does give rise to a question of fact; it seems to refer to the photo at issue (a Cambodian woman selling bugs) and the publication at issue (Read 180, rBook).

Row 13a shall proceed to trial.

2.   Row 13b

Scholastic's motion for summary judgment based on the statute of limitations is denied.

Mr. Menzel's motion for summary judgment is also denied because there is a question of fact. The same basic analysis above for Row 13a applies here. However, Row 4 in Ex. PP is the applicable row instead of Row 5.

Row 13b shall proceed to trial.

3.   Row 14

Scholastic's motion for summary judgment based on the statute of limitations is denied.

Mr. Menzel's motion for summary judgment is granted. Mr. Menzel has pointed to a photo used in a book (2007) for which Scholastic has not produced a license/invoice. Scholastic has not pointed to a license/invoice or any other document suggesting that the use might have been licensed.

Although Mr. Menzel is entitled to summary judgment on Row 14, the issue of damages is still in need of resolution.

4.   Row 15a

Scholastic's motion for summary judgment based on the statute of limitations is denied.

Mr. Menzel's motion for summary judgment is granted. Scholastic had a license for the photo (see Row 79), but the license did not cover online/electric publication and Scholastic posted a copy of the publication at issue (SuperScience) online. Scholastic has not shown that the

20

affirmative defense of copyright invalidity/unenforceability is applicable.

Although Mr. Menzel is entitled to summary judgment on Row 15a, the issue of damages is still in need of resolution.

### 5. Row 15b

Scholastic's motion for summary judgment based on the statute of limitations is denied.

Mr. Menzel's motion for summary judgment is granted. Scholastic had a license for the photo (see Row 80), but the license did not cover online/electric publication and Scholastic posted a copy of the publication at issue (SuperScience) online.

Although Mr. Menzel is entitled to summary judgment on Row 15b, the issue of damages is still in need of resolution.

### 6. Row 15c

Scholastic's motion for summary judgment based on the statute of limitations is denied.

Mr. Menzel's motion for summary judgment is granted. Scholastic had a license for the photo (see Row 81), but the license did not cover online/electric publication and Scholastic posted a copy of the publication at issue (SuperScience) online.

Although Mr. Menzel is entitled to summary judgment on Row 15c, the issue of damages is still in need of resolution.

### 7. Row 17a

Scholastic's motion for summary judgment based on the statute of limitations is denied.

Row 17a shall proceed to trial.

### 8. Row 17b

Scholastic's motion for summary judgment based on the statute of limitations is denied.

Mr. Menzel's motion for summary judgment is granted. Scholastic had a license for the photo (see Row 73), and the license allowed for online/electronic use through May 2016, but Scholastic posted a copy of the publication (Junior Scholastic) online after May 2016.

Although Mr. Menzel is entitled to summary judgment on Row 17b, the issue of damages is still in need of resolution.

9.     Row 17c

Scholastic's motion for summary judgment based on the statute of limitations is denied.

Mr. Menzel's motion for summary judgment is granted.  Scholastic had a license for the photo (see Row 74), and the license allowed for online/electronic use through May 2016, but Scholastic posted a copy of the publication (Junior Scholastic) online after May 2016.

Although Mr. Menzel is entitled to summary judgment on Row 17c, the issue of damages is still in need of resolution.

10.     Row 17d

Scholastic's motion for summary judgment based on the statute of limitations is denied.

Mr. Menzel's motion for summary judgment is granted.  Scholastic had a license for the photo (see Row 75), and the license allowed for online/electronic use through May 2016, but Scholastic posted a copy of the publication (Junior Scholastic) online after May 2016.

Although Mr. Menzel is entitled to summary judgment on Row 17d, the issue of damages is still in need of resolution.

11.     Row 17e

Scholastic's motion for summary judgment based on the statute of limitations is denied.

Mr. Menzel's motion for summary judgment is granted.  Scholastic had a license for the photo (see Row 76), and the license allowed for online/electronic use through May 2016, but Scholastic posted a copy of the publication (Junior Scholastic) online after May 2016.

Although Mr. Menzel is entitled to summary judgment on Row 17e, the issue of damages is still in need of resolution.

12.     Row 17f

Scholastic's motion for summary judgment based on the statute of limitations is denied.

Mr. Menzel's motion for summary judgment is granted.  Scholastic had a license for the photo (see Row 77), and the license allowed for online/electronic use through May 2016, but Scholastic posted a copy of the publication (Junior Scholastic) online after May 2016.

Although Mr. Menzel is entitled to summary judgment on Row 17f, the issue of damages is still in need of resolution.

United States District Court
Northern District of California

13. <u>Row 1</u>

Scholastic's motion for summary judgment is denied. The statute-of-limitations defense is not applicable. In addition, there is a question of fact as to whether the license/invoice was exceeded. Although there is no usage data for this photo, a reasonable jury could still infer that Scholastic exceeded the license/invoice based on other evidence – *e.g.*, if Scholastic exceeded licenses/invoices in many other situations.

Row 1 shall proceed to trial.

14. <u>Rows 2-11</u>

Scholastic's motion for summary judgment is denied. The same basic analysis above for Row 1 applies here. (For Row 3, the affirmative defense of copyright invalidity/unenforceability is not applicable.)

Rows 2-11 shall proceed to trial.

15. <u>Row 12</u>

Scholastic's motion for summary judgment is denied. The statute-of-limitations defense is not applicable. Also, there is a question of fact; depending on the circumstances, a reasonable jury could make inferences about circulation numbers for the magazine based on circulation numbers for subsequent years.

Row 3 shall proceed to trial.

16. <u>Rows 13-21</u>

Scholastic's motion for summary judgment is denied. The same basic analysis above for Row 1 applies here.

Rows 13-21 shall proceed to trial.

17. <u>Row 22</u>

Scholastic's motion for summary judgment based on the statute of limitations is denied.

Mr. Menzel's motion for summary judgment is granted. The license/invoice allowed for 120,000 uses and Scholastic does not dispute that it exceeded this use.

Although Mr. Menzel is entitled to summary judgment on Row 22, the issue of damages is still in need of resolution.

23

18. <u>Rows 23-27</u>

Scholastic's motion for summary judgment based on the statute of limitations is denied.

Mr. Menzel's motion for summary judgment is granted. The same basic analysis above for Row 22 applies here.

Although Mr. Menzel is entitled to summary judgment on Rows 23-27, the issue of damages is still in need of resolution.

19. <u>Rows 28-49</u>

Scholastic's motion for summary judgment is denied. The same basic analysis above for Row 1 applies here. (For Rows 47-49, the affirmative defense of copyright invalidity/unenforceability is not applicable.)

Rows 28-49 shall proceed to trial.

20. <u>Row 50</u>

Scholastic's motion for summary judgment based on the statute of limitations is denied.

Mr. Menzel's motion for summary judgment is denied. Scholastic is not precluded from asserting the affirmative defense of copyright invalidity/unenforceability (*i.e.*, based on infringement before registration). There is also a question of fact as to whether Mr. Menzel "regularly issued licenses despite being aware that the publication had already been printed, or printed in part."

Row 50 shall proceed to trial.

21. <u>Row 51</u>

Scholastic's motion for summary judgment based on the statute of limitations is denied.

Mr. Menzel's motion for summary judgment is denied. The same basic analysis above for Row 50 applies here.

Row 51 shall proceed to trial.

22. <u>Row 52</u>

Scholastic's motion for summary judgment based on the statute of limitations is denied.

Row 52 shall proceed to trial.

23.    Rows 53-54

Scholastic's motion for summary judgment is denied.  The same basis analysis above for Row 1 applies here.

Rows 53-54 shall proceed to trial.

24.    Row 55

Both parties' motions for summary judgment are denied.  There is a question of fact.  The license/invoice allows for publication in North America.  Scholastic ended up using the photo in a publication titled Weird Science Jobs.  Scholastic produced a document (Ex. E) that indicates that Weird Science Jobs had a "Distribution" of "UNRESTRICTED" and a "Territory" of "WORLD." Mr. Menzel thus argues that there is evidence showing that Weird Science Jobs was published outside of North America.  Scholastic argues that Ex. E "does not show any *actual* distribution of this photograph outside of North America" (emphasis added), which is true, but such could reasonably be inferred.  On the other hand, Ex. E is not necessarily dispositive as it is not clear what kind of document Ex. E is in the first place, whether it is accurate, and whether "UNRESTRICTED" and "WORLD" means that, in fact, global distribution was not just contemplated but in fact accomplished or likely.

However, to the extent Mr. Menzel claims infringement because Scholastic "began printing this publication . . . before it sought a license," the Court rejects that infringement theory. Scholastic asserts that "Menzel was aware that the book had already been published when he granted the rights to this image."  The evidence supports this assertion.  *See* Ex. Z (invoice request to Mr. Menzel *dated September 2, 2003*, and asking for permission to use photo in Weird Science Jobs "scheduled for publication *in August 2003*") (emphasis added).  Mr. Menzel's response is that the actual invoice provides: "Rights are granted to 'Scholastic Inc.' *only upon full payment of this invoice*."  Docket No. 107-4, at 19 (Menzel Decl., Ex. B) (emphasis added).  Mr. Menzel suggests that he could not have authorized prior use because Scholastic did not have any right to reproduce until it paid the invoice.  This argument is not persuasive; there is no dispute that Scholastic did pay and, once Scholastic paid, the only reasonable inference to be drawn is that Scholastic was thereby given the retroactive right to reproduce.

1    Row 55 shall proceed to trial.

2        25.    Row 56

3    Scholastic's motion for summary judgment based on the statute of limitations is denied.

4    Row 56 shall proceed to trial.

5        26.    Row 57

6        Scholastic's motion for summary judgment is granted.  The license/invoice allowed for

7    40,000 uses.  It appears that Scholastic ended up using the photo in New Book of Knowledge 2003

8    (which has the ISBN 0717205355).  *See* Docket No. 126-1 (joint chart).  Ex. E reflects that there

9    were ▉▉▉ copies made of New Book of Knowledge 2003 (ISBN 0717205355).  *See* Ex. E (third

10   table on page 4).  Thus, the use here – ▉▉▉ – was within the scope of the license.

11       Mr. Menzel suggests that there is a question of fact because a different publication NBKA

12   Blue English (ISBN 0717206424) was printed ▉▉▉ times (*i.e.*, in excess of the 40,000 licensed

13   uses).  *See* Ex. U (second entry); *see also* Ex. U (showing ISBN for NBKA Blue).  But there is no

14   evidence that the photo at issue was contained in this different publication.

15       The copyright infringement claim based on Row 57 is dismissed.

16       27.    Rows 58-59

17   Scholastic's motion for summary judgment based on the statute of limitations is denied.

18       Mr. Menzel's motion for summary judgment is granted.  The license/invoice allowed for

19   distribution in North America only and there was distribution outside of North America.

20       Although Mr. Menzel is entitled to summary judgment on Rows 58-59, the issue of

21   damages is still in need of resolution.

22       28.    Row 60

23   Scholastic's motion for summary judgment based on the statute of limitations is denied.

24       Mr. Menzel's motion for summary judgment is granted.  The license/invoice allowed for

25   350,000 uses and Scholastic printed ▉▉▉ copies.

26       Although Mr. Menzel is entitled to summary judgment on Row 60, the issue of damages is

27   still in need of resolution.

28

29. <u>Row 61</u>

Scholastic's motion for summary judgment based on the statute of limitations is denied.

Mr. Menzel's motion for summary judgment is granted. The license/invoice allowed for 609,000 uses and Scholastic printed ███ copies.

Although Mr. Menzel is entitled to summary judgment on Row 61, the issue of damages is still in need of resolution.

30. <u>Rows 62-68</u>

Scholastic's motion for summary judgment based on the statute of limitations is denied.

Mr. Menzel's motion for summary judgment is granted. The license/invoice allowed for 300,000 uses and Scholastic printed ███ copies.

Although Mr. Menzel is entitled to summary judgment on Rows 62-68, the issue of damages is still in need of resolution.

31. <u>Row 69</u>

Scholastic's motion for summary judgment is denied. The same basis analysis above for Row 1 applies here.

Row 69 shall proceed to trial.

32. <u>Row 70</u>

Scholastic's motion for summary judgment based on the statute of limitations is denied.

Mr. Menzel's motion for summary judgment is granted. The license/invoice allowed for 260,000 uses and Scholastic made ███ copies.

Although Mr. Menzel is entitled to summary judgment on Row 70, the issue of damages is still in need of resolution.

33. <u>Row 71</u>

Scholastic's motion for summary judgment based on the statute of limitations is denied.

Mr. Menzel's motion for summary judgment is granted. The license/invoice allowed for 100,000 uses and Scholastic made ███ copies. The affirmative defense of copyright invalidity/unenforceability is not applicable.

Although Mr. Menzel is entitled to summary judgment on Row 71, the issue of damages is

United States District Court
Northern District of California

1   still in need of resolution.

2       34.    Rows 72-78

3   Scholastic's motion for summary judgment based on the statute of limitations is denied.

4   Mr. Menzel's motion for summary judgment is granted.  The license/invoice allowed for

5   375,000 uses in North America and Scholastic made ███████ copies and distributed outside of

6   North America.

7   Although Mr. Menzel is entitled to summary judgment on Rows 72-78, the issue of

8   damages is still in need of resolution.

9       35.    Row 79

10  Scholastic's motion for summary judgment based on the statute of limitations is denied.

11  Mr. Menzel's motion for summary judgment is granted.  The license/invoice allowed for

12  133,000 uses and Scholastic made ██████ copies.  The affirmative defense of copyright

13  invalidity/unenforceability is not applicable.

14  Although Mr. Menzel is entitled to summary judgment on Row 79, the issue of damages is

15  still in need of resolution.

16      36.    Rows 80-81

17  Scholastic's motion for summary judgment based on the statute of limitations is denied.

18  Mr. Menzel's motion for summary judgment is granted.  The license/invoice allowed for

19  133,000 uses and Scholastic made ██████ copies.

20  Although Mr. Menzel is entitled to summary judgment on Rows 80-81, the issue of

21  damages is still in need of resolution.

22      37.    Rows 82-83

23  Scholastic's motion for summary judgment based on the statute of limitations is denied.

24  Mr. Menzel's motion for summary judgment is granted.  Mr. Menzel claims that Scholastic

25  printed the photo in the publication at issue (Food: The Good, the Bad, and the Gross, Read 180

26  Stage A, ISBN 0545340799) "before obtaining a license to do so."  The invoice date is August 4,

27  2011. *See* Docket No. 126-1 (joint chart); Docket No. 107-4, at 48 (Menzel Decl., Ex. B) (Invoice

28  No. 2419).  Ex. P indicates that the "Food" publication with the specific ISBN was published in

1    some instances after August 4, 2011, but in other instances *before* August 4, 2011. *See* Ex. P (top

2    of page 4). Scholastic has not specifically claimed here that Mr. Menzel knew about the use prior

3    to August 4, 2011, before he entered into the license/invoice, and thus there is no basis to infer the

4    license covered prior publication.

5        Although Mr. Menzel is entitled to summary judgment on Rows 82-83, the issue of

6    damages is still in need of resolution.

7        38.    Row 84

8        Scholastic's motion for summary judgment based on the statute of limitations is denied.

9        Mr. Menzel's motion for summary judgment is also denied. Mr. Menzel claims the

10   license/invoice was exceeded because Scholastic used the photo at issue two times in the

11   publication and "Scholastic has not produced any license authorizing a second use of this image."

12   However, the license/invoice at issue – Invoice No. 2419 – seems to provide for a "2nd use."

13   Docket No. 107-4, at 48 (Menzel Decl., Ex. B) (describing image of "Grasshopper Taco," a spot

14   size for which Scholastic was charged $250 and a "2nd use: 1/6 page" for which Scholastic was

15   charged another $250). Thus, there is a question of fact.

16       Row 84 shall proceed to trial.

17       39.    Row 85

18       Scholastic's motion for summary judgment based on the statute of limitations is denied.

19       Mr. Menzel's motion for summary judgment is also denied. Similar to above, Mr. Menzel

20   claims that the license/invoice did not authorize use of the photo at issue two times. But Invoice

21   No. 2419 refers to "Image: Cambodia, women selling cooked cicadas: 1/2 page" and then "Image:

22   Cambodia, women selling cooked cicadas: 1/12 page teachers edition (50,000)." Docket No. 107-

23   4, at 48 (Menzel Decl., Ex. B). In short, there is a question of fact.

24       Row 85 shall proceed to trial.

25       40.    Row 86

26       Scholastic's motion for summary judgment is granted. Mr. Menzel does not oppose

27   Scholastic's request for a finding of noninfringement.

28       The copyright infringement claim based on Row 86 is dismissed.

41.   Row 87

Scholastic's motion for summary judgment is granted. According to Mr. Menzel, the license/invoice is dated February 4, 2014, but Scholastic began to use the photo at issue before then. However, as Scholastic points out, Mr. Menzel "was aware in granting the license that the publication has already been published." *See* Ex. JJ (license/invoice showing date of February 4, 2014, and referring to use in a Scholastic publication dated October 2013).

The copyright infringement claim based on Row 87 is dismissed.

42.   Row 88

Scholastic's motion for summary judgment is granted. The same basic analysis above for Row 87 applies here.

The copyright infringement claim based on Row 88 is dismissed.

43.   Row 89

Scholastic's motion for summary judgment based on the statute of limitations is denied.

Mr. Menzel's motion for summary judgment is granted. The license/invoice allowed for 542,656 uses and Scholastic made ███████ copies. The affirmative defense of copyright invalidity/unenforceability is not applicable.

Although Mr. Menzel is entitled to summary judgment on Row 89, the issue of damages is still in need of resolution.

44.   Rows 90-91

Scholastic's motion for summary judgment based on the statute of limitations is denied.

Mr. Menzel's motion for summary judgment is granted. The same basic analysis above for Row 89 applies here (except here Scholastic does not assert the affirmative defense of copyright invalidity/unenforceability).

Although Mr. Menzel is entitled to summary judgment on Rows 90-91, the issue of damages is still in need of resolution.

45.   Row 92

Both parties' motions for summary judgment are denied. There is a question of fact. Mr. Menzel claims that the license/invoice only allowed for 1,200,000 uses, *see* Ex. MM (providing

for print run of 1.2 million), which Scholastic exceeded by making ███ copies for distribution to students and another ███ copies for distribution to teachers. Mr. Menzel relies on Ex. O (page 2 of 7) to support these distribution numbers. But elsewhere in Ex. O (page 1) it is suggested that the distribution number was smaller – *i.e.*, ███ copies for distribution to students and ███ copies for distribution to teachers (for a total of ███).

Row 92 shall proceed to trial.

46.   <u>Row 93</u>

Both parties' motions for summary judgment are denied. There is a question of fact. The situation on this alleged infringement is somewhat confusing. The license/invoice can be found at Ex. NN. It reflects a print run of 939,000 for use in Scholastic News 4, "issue dated 10/26/2015." Ex. NN. Ex. M is a document that relates to actual print runs of Scholastic News 4. Based on page 1, it appears that there were ███ copies for distribution to students and ███ copies for distribution to teachers.

Although the above suggests that the license/invoice scope was exceeded, Scholastic suggests that the Teacher's Edition of Scholastic News 4 did not actually contain the photo at issue. *See* Ex. TT. This appears to be true. In response, Mr. Menzel argues that the Teacher's Edition is dated October 26, 2015, and he is claiming infringement based on a publication dated October *16*, 2015. But how Mr. Menzel is claiming a publication date of October 16, 2015, is not clear given that the invoice at issue implicates Scholastic News 4, dated October 26, 2015.

Assuming that Scholastic has the better argument on the above, one would think that Scholastic's position would be that only the ███ copies for distribution to students (as reflected in Ex. M) should count. However, in the chart, Scholastic states that the print run on the Student Edition "is ███ [which is] within the license limit." But this position does not make sense because the license/invoice clearly allows for only 939,000 copies.

Row 93 shall proceed to trial.

47.   <u>Row 94</u>

Scholastic's motion for summary judgment is granted. The issue on this alleged infringement relates to use of the photo at issue before the license/invoice date. The

license/invoice date is February 3, 2016. *See* Ex. UU. The license/invoice refers to publication in Scholastic News 5/6, "issue dated 10/26/2015" – *i.e.*, several months before the license/invoice date. Scholastic thus argues that necessarily means Mr. Menzel approved of the prior use with the license. In response, Mr. Menzel argues that there is a question of fact because the license/invoice also states: "Rights are granted to 'Scholastic, Inc.' *only upon full payment of this invoice*." Ex. UU (emphasis added). As indicated above in the analysis for Row 55, Mr. Menzel's argument is not persuasive. There is no dispute that Scholastic did pay and, once Scholastic paid, the only reasonable inference that could be made is that Scholastic was thereby given the retroactive right to reproduce.

The copyright infringement claim based on Row 94 is dismissed.

F. <u>Willful Infringement</u>

Finally, Mr. Menzel has moved for summary judgment on the issue of willful infringement. Presumably, Mr. Menzel is only asking for a finding of willful infringement to the extent the Court has found in his favor above.

The Court denies the motion for summary judgment. The evidence of record is not enough to show willful infringement as a matter of law – *i.e.*, where the only conclusion a reasonable jury could reach is willful infringement. Whether Scholastic willfully infringed will turn on more than just the number of times Mr. Menzel's rights were infringed.[8] Other factors that may inform the analysis include: the number of times Scholastic did not infringe Mr. Menzel's rights; the number of times Scholastic infringed, or did not infringe, other licensors' rights; whether Scholastic knew or should have known of infringement of its licensors' rights (whether the rights of Mr. Menzel or the rights of other licensors); how many licenses Scholastic has taken over the years; and so forth.

Accordingly, Mr. Menzel's motion for summary judgment on willful infringement is denied.

///

///

---

[8] To the extent Mr. Menzel claims that the testimony of Scholastic's 30(b)(6) witness is essentially dispositive on the issue of willfulness, the Court does not agree.

## II.     <u>**CONCLUSION**</u>

For the foregoing reasons, both parties' motions are granted in part and denied in part.  The issues remaining for trial include: (1) claims for infringement where there are questions of fact to be decided; (2) damages for those claims where Mr. Menzel was granted summary judgment; and (3) willful infringement.

This order disposes of Docket Nos. 105 and 107.

**IT IS SO ORDERED**.

Dated: December 18, 2019

_____
EDWARD M. CHEN
United States District Judge